United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,                               Case No. 19-20100

    v.                                       Hon. Nancy G. Edmunds

D-2 Tamara Rose,

    Defendant.

_____/

## Government's Sentence Memorandum

In the summer of 2017, Jermaine Matthews advised a DEA CS after providing him a sample of counterfeit oxycodone pills and that he believed to be a would be Detroit drug distributor, that Matthews could provide "A thousand, two thousand, three thousand, four thousand, five thousand, whatever pills, at twelve (dollars each)". Ms. Rose, together with her codefendants Jermaine Matthews and Donzell Coats, accomplished the delivery of hundreds of pills containing the controlled substance fentanyl to Matthews or his customers, through her own efforts and also by involving, in some cases, unwitting family members.

Given Rose's and the nature of the offenses, in this case the court should impose a sentence, given the limited guideline range, of 60 months followed by 3 years of supervised release.

## Background

From at least August 2018 until March of 2019, Jermaine Matthews was selling pills that appeared to be 30-milligram Oxycodone pills to what he believed to be a drug distributor in the Detroit area. In reality, the pills contained the controlled substance, fentanyl.

Matthews was obtaining the pills from a Tamara Rose in Arizona and having Rose ship the pills to Michigan. A confidential source working with the DEA in Detroit was able to purchase over 1000 pills during a six month period. Matthews sold the pills at price of between $12 and $15 per pills and in an initial conversation with a CI, advised that he could, if desired, obtain thousands of them.



Pills intercepted by DEA from Arizona sent at Rose's direction to Michigan, seized from US Mail.

On August 13, 2018, Matthews had made contact with an individual who he gave sample Fentanyl laced Oxycodone pills with the suggestion that the person could have his "people" try the pills and see if "they liked them". Matthews provided three pills to the man who was in fact a DEA cooperating source (CS). In a call with Matthews shortly after the delivery, the CS was advised that the pills differed in color to reflect their respective strength and Matthews confirmed that they contained Fentanyl. He then advised that he could get, "A thousand, two thousand, three thousand, four thousand, five thousand, whatever" pills, "At twelve(dollars)".

3

On August 17, 2018, Matthews delivered 300 pills to the CS and discussed other drugs that he could obtain for the CS to sell.  Later purchases totaled over 600 pills.  On September 26, 2018, Matthews negotiated the sale of 200 additional pills for $3000.  Rose through the mail regularly sent the pills. In September 2018, the DEA placed a tracking device on ROSE's overnight packages shipped by the United States Postal Service (USPS) from Arizona to Michigan. During several occasions, authorities observed ROSE drop off packages destined for  Rackham Drive, Southfield, Michigan (her mother's residence) and other locations within the Detroit area. Throughout the course of their investigation, the DEA determined multiple packages were mailed to his address from ROSE. On September 28, 2018 the DEA, while conducting surveillance, observed Rose's mother and daughter as well as Jermaine Matthews 69 year old aunt, all unwittingly assisting in the ultimate delivery of pills to the DEA CS.

A later delivery of pills was intercepted by DEA. When the CS contacted Matthews, he was passed on to Defendant Rose, who assured the CS that the pills would be located.  She further advised that she was the boss, he could contact her direct and could get the CS anything he needed. On September 29, 2018 the CS was directed to pick the pills of from

4

Matthews' 69 yr old aunt in Royal Oak. A grand jury indicted Rose with Count I - conspiracy to distribute fentanyl, Counts 2 and 3, distribution of fentanyl, and Count 5, use of a communication device in furtherance of drug transaction, in violation of 21 U.S.C. § 846, 841(a)(1) and 843(b). (R. 1: Indictment). Rose pled guilty on August 21, 2019 to Counts 1 and 5 of the Indictment. Her sentencing hearing is scheduled for February 24, 2020.

## II. Sentencing Guideline Calculations/Relevant 3553(a) Factors

Pursuant to 18 U.S.C. §3553(a), Congress has provided relevant objectives and factors to be considered by sentencing courts in imposing a sentence sufficient, but not greater than necessary.

Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

### A. The Advisory Guideline Range

"This court and others have repeatedly held since *Booker* that district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance of the evidence standard that governed prior to Booker." *United States v. Lacefield*, 250 Fed. Appx. 670, 676 (6th Cir. 2007), citing *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir.2006) (citing, *inter alia*, *United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir.2005).

In *United States v. Gall*, 552 U.S. 38, 41 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court. The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Id.* at page 47. The Court also held that while the district court should begin all sentencing proceedings by correctly calculating applicable Guidelines range, after doing so, both parties should be provided an opportunity to argue for whatever sentence they deem appropriate. Finally, the court should then consider all the statutory factors under §3553(a) to determine whether they support the sentence requested by either party prior to imposing sentence.

The Rule 11 Plea agreement between the government and Ms. Rose contemplated an advisory sentencing guideline range of 46-57 months, however the 60-month mandatory minimum required because of the amount

6

of controlled substances involved makes that term the effective guideline range. The Government requests that the Court accept the plea agreement between the parties.

### B. Sentencing Factors in 18 U.S.C. § 3553(a)

1. Imposition of a Sentence; Nature and Circumstances of the Offense and the History and Characteristics of the Defendant; 18 U.S.C. § 3553(a)(1)

**Circumstances of the Offense**

The nature and circumstances of these offenses are detailed in Section I above and in the Presentence Report prepared by the United States Probation Department. Additional aspects of the offense are below. The government also respectfully requests that the court consider the nature and characteristics of the defendant, Mr. Matthews.

**Defendant's History and Characteristics**

The Presentence report reveals that Ms. Rose was childhood was unconventional but among members of a loving and supportive family. She reports that her later childhood and adolescence included a number of sexual assaults. More recently, Ms. Rose has been impacted by the loss of a number of family members including her father.

With respect to her criminal history, Mr. Rose's prior criminal conduct is limited to a 2004 conviction for a drunk driving and cocaine related offense.

**2. Seriousness of the Offense, Promoting Respect for Law, and Providing Just Punishment; 18 U.S.C § 3553(a)(2)(A)**

Equally as important in determining the appropriate sentence as the circumstances of her personal history and prior conviction is the seriousness of the crime. The offense is societal and causing greater damage each year. There are no overt acts of violence charged against the defendants in this case. However, felony conduct involving the distribution and illegal sale of narcotics, particularly fentanyl, is serious. Mr. Rose, for her personal gain, was content to contribute to the ongoing opioid epidemic in the United States. Clearly, the conduct even carries ramifications beyond just the conspiracy nd shipping the pills as individuals, families and communities are physically harmed through drug dependency and addiction.

Clearly, narcotics trafficking continues to destroy the lives of those addicted to illegal drugs. It also can destroy the lives of defendants who commit these crimes. The families of the addicts/customers are impacted both financially and emotionally. For the defendant, as in many cases, the choice to make money or to enable her own drug use, for whatever benefit it may have provided in the short run, ended badly for everyone involved. Beyond

that, Ms. Rose knows the personal impact of drug abuse and repercussions given her maltreatment at the hands of a drug dealer. Nevertheless, being aware of the possible repercussions of her actions, and by assisting drug addicted users continue their addiction and suffer from that use is difficult to comprehend. It is, however, the choice that Ms. Rose made.

Distribution of illegal, destructive drugs in a community causes damage to that community. "If a criminal defendant possesses an illegal substance with the intent to distribute that substance to others, unquestionably there are victims. The lack of an identifiable person in this case does not equate to a completely "victimless" crime. …. Society as a whole is the victim when illegal drugs are being distributed in its communities." *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008); *United States v. Hodges*, 641 F. App'x 529, 532 (6th Cir.), *cert. denied*, 137 S. Ct. 134, 196 L. Ed. 2d 104 (2016).

A sentence that provides just punishment for Ms. Rose will hopefully convince her that the choice to engage in drug crime will neither be tolerated, nor can it be any part of her future beyond his incarceration. It will also hopefully encourage others to respect the law over whatever personal benefit they hope to derive through drug distribution.

    3.    **Deterrence; 18 USC §3553(a)(2)(B)**

The second consideration of 3553(a) is the need to deter continued conduct of this type by the defendant and to deter such conduct by others. The conduct engaged in by defendant Rose involved a combined effort with others to obtain drugs and make them available for additional distribution. The addictive nature of the substance involved highlights the need for consideration of an initial sentence that provides a deterrent message to others. Certainly, the mandatory minimum for the distribution charge is statutorily required to provide that message. "General deterrence . . . is one of the key purposes of sentencing. . . ." *United States v. Walker,* 844 F.3d 1253, 1257–58 (10th Cir. 2017); *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006); see also *United States v. Milo*, 506 F.3d 71, 76 (1st Cir. 2007) ("The need to deter others is under federal law a major element in criminal sentencing.").

Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); see also *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006), (affirming a defendant's sentence where the district court in its §3553 analysis stated that it doubted the defendant would ever engage in the conduct again, but that a primary sentencing factor was the need "to

deter other similarly situated individuals from engaging in the conduct"). The government hopes that a sentence in the advisory guidelines will provide this clearly needed deterrence.

### 4. Protecting the Public; 18 U.S.C. §3553(a)(2)(C)

As to protecting the public from further crimes of this defendant, the United States is hopeful that Ms. Rose will refrain from illegal activity ever again. For any period of time that she is incarcerated, that is minimized. Upon release, Ms. Rsoe will also be subject to a period of supervised release during which she will be subject to oversight by the probation department. The Government hopes that she will take advantage of all program assistance that is provided to her while she is incarcerated or through probation. Ms. Rose's stated desire for self-improvement, if achieved, will further protect the public.

### III. Conclusion / Government Recommendation

The United States certainly recognizes the ability and responsibility of the Court to fashion a sentence within, or perhaps, outside of a particular sentencing guideline range. The balance between fashioning a sentence that accounts for all of the 3553(a) factors and is impacted by a mandatory minimum sentence is not a simple mathematical equation. The individual facets of each case have significant impact. In a case where there

is a mandatory minimum, the court has a restricted framework within which to fashion a result. However, the offense here was serious. The controlled substances, sold and intended to be sold by Ms. Rose have a devastating impact on society, the people who illegally distribute the drugs and their families, and the people addicted to the drug and their families.

Given all of the above considerations, the United States respectfully requests that the court consider all of the above and the mandatory minimum in this case and impose a sentence for Ms. Rose that is sufficient, to punish her for her conduct. Further that her sentence be followed by the required term of supervised release.

        Matthew Schneider
        United States Attorney

        *s/John N. O'Brien II*
        John N. O'Brien II
        Assistant United States Attorney
        211 W. Fort St. Suite 2001
        Detroit, MI 48226
        (313) 226-9715
        john.obrien@usdoj.gov

Date: February 20, 2020

**Certificate of Service**

I certify that on February 20, 2020, I electronically filed the foregoing Sentencing Memorandum with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

        Pamella Szydlak
        Attorney for Defendant
        --------------

        */s/ John N. O'Brien II*
        John N. O'Brien II
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, Michigan 48226
        john.obrien@usdoj.gov
        313-226-9715

February 20, 2020